UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

```
-------------------------------------------------X
ROBERT COENE and                          )
VALERIE COENE,                            )
                                          )
            Plaintiffs,                   )
                                          )
            -v-                           )          Index No.
                                          )
3M COMPANY, AS SUCCESSOR BY               )
MERGER TO MINNESOTA MINING                )
& MANUFACTURING COMPANY                   )
AND/OR ITS PREDECESSORS/                  )
SUCCESSORS IN INTEREST,                   )          JURY TRIAL DEMANDED
DTM CORPORATION, VALIMET, INC.            )
POTTERS INDUSTRIES, INC., and             )
ARKEMA, INC.                              )
                                          )
            Defendant.                    )
-------------------------------------------------X
```

## COMPLAINT

Come now Plaintiffs Robert Coene (hereinafter "Plaintiff"), and Valerie Coene,

(hereinafter "Valerie Coene"), for their respective causes of action against Defendant, allege and

state as follows:

## PARTIES

1.      Plaintiffs are now residents of the State of Michigan. During the relevant time

period covered by this case, Plaintiffs resided within Monroe County, New York.

2.      At all relevant times hereinafter mentioned, Plaintiff was employed by Eastman

Kodak Company and primarily performed his job duties on the premises of his employer in

Rochester, New York.

3.      Plaintiff's job duties involved working in areas containing silica dust.

4.      Defendant 3M Company (hereinafter "3M") is a Delaware Corporation with its principal place of business in Minnesota.

5.      3M is the successor in interest to Minnesota Mining and Manufacturing Company and is responsible for any liability for its own conduct and that of Minnesota Mining and Manufacturing.

6.      At all times herein, 3M was doing business in New York and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address: CT Corporation Systems, 111 Eighth Avenue, New York, NY 10011.

7.      Defendant, DTM Corporation is a Texas corporation with its principal place of business in Texas.

8.      DTM Corporation was doing business in New York during the relevant time period and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address: CT Corporation Systems, 111 Eighth Avenue, New York, NY 10011.

9.      Defendant, Valimet, Inc. is a Delaware Corporation with its principal place of business located at 431 Sperry Road, Stockton, San Joaquin County, California. Defendant may be served by serving a copy of the summons and the original complaint to the Department of State of New York at 123 William Street, Room #20, New York, New York 10038, as agent of service of process for Defendant Valimet, Inc., with summons and original complaint to be forwarded via certified mail, return receipt requested to c/o registered agent, to George T. Campbell at 431 Sperry Road, Stockton, San Joaquin, California 95206.

10.     Defendant, Potters Industries, Inc. is a New York corporation with its principal place of business in Pennsylvania.

11.     Potters Industries, Inc. was doing business in New York during the relevant time period and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address: CSC Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

12.     Defendant, Arkema, Inc, is a Pennsylvania corporation with its principal place of business at 2000 Market Street, Philadelphia, Pennsylvania.

13.     Arkema, Inc., was doing business in New York during the relevant time period and can be served with process by sending a copy of the summons and complaint to its registered agent at the following address: Corporation Service Company, 80 State Street, Albany, New York 12207.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.

15.     Defendants are subject to the personal jurisdiction of this Court by virtue of the fact that they do (or did) business in the State of New York and committed torts in whole or in part in this State against Plaintiff, in this judicial district, as more fully set forth herein.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  The events that give rise to this claim occurred in Monroe County, New York which is within the judicial district for the United States District Court for the Western District of New York.

## FACTS COMMON TO ALL COUNTS

17.     Plaintiff was employed by Eastman Kodak Company from January 6, 1992 to February 1, 2002.

3

18.     During the course of his employment, Plaintiff was continuously exposed to silica dust.

19.     3M is the designer, manufacturer, distributor and seller of the respirators, namely the 3M 8710 used by Plaintiff throughout the duration of his employment at Eastman Kodak Company.

20.     During the course of his employment, Plaintiff utilized respirators manufactured, designed, distributed, sold, and recommended by 3M.

21.     The respirators that Plaintiff utilized were specifically known under the product names or identifications as follows:  3M 8710.

22.     The respirators utilized by Plaintiff failed to perform properly which caused or contributed to cause Plaintiff to develop silicosis.

23.     At all times during his exposure to silica dust, Plaintiff was unaware that 3M respirators would fail and that this failure would cause Plaintiff serious adverse health conditions.

24.     3M knew or should have known that ordinary use of its product would not adequately protect users, including Plaintiff, from serious harm and, therefore, 3M is liable for Plaintiff's bodily harm.

25.     Therefore, under the aforesaid facts, Plaintiff is entitled to recovery against 3M under various legal theories, including product liability, breach of warranty, and negligence.

26.     Defendants DTM Corporation, Potter Industries, Inc., Valimet, Inc. and Arkema, Inc. manufactured power coatings which contained silica or would transform into crystalline silica during the industrial process occurring at the Eastman Kodak plant.  Because these products contained crystalline silica, Plaintiff Robert Coene was exposed to respirable free silica

which caused him to contract silicosis.  These Defendants failed to warn Plaintiff that the

materials and products in question that were handled by Plaintiff could cause a deadly disease

known as silicosis.  The Defendants had a responsibility under law to warn of the risks and

hazards associated with the use and exposure to chemicals it manufactured.  These Defendants

are, therefore, liable for Plaintiffs' bodily injury.

## PLAINTIFF'S DAMAGES

27.   As a direct result of defendants' actions and the silicosis that he contracted,

Plaintiff has suffered the following damages and personal injury for which he now seeks redress:

(a)   Plaintiff has suffered and will continue to suffer great pain of body and anguish of mind throughout his lifetime;

(b)   Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses, which he will continue to incur in the future due to treatment necessary to prolong his life;

(c)   Plaintiff has suffered and will continue to suffer physical and mental anguish in the future due to the disabling character of silicosis;

(d)   Plaintiff has suffered and will continue to suffer impairment in the future due to silicosis;

(e)   Plaintiff suffers and will continue to suffer permanent disabilities due to the disabling nature of silicosis;

(f)   Plaintiff has suffered loss of earnings and will continue to suffer loss of earnings and wages throughout the remainder of his work life expectancy due to the disabling effects of silicosis;

(g)   Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities.  Due to the disabling effects of silica related occupational lung disease, Plaintiff has been and will be prevented from participating in said activities, which were normal to him prior to developing silica dust induced airway obstruction.  Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

(h)   Plaintiff has suffered and will continue to suffer from a shortened life expectancy and the mental anguish thereby caused due to the terminal nature of silicosis;

(i)    Plaintiff has suffered and will continue to suffer from shortness of breath, extensive coughing and wheezing, severe impairment and limitation of lung functions, chest pain and pain in his entire body.  Further, Plaintiff has suffered and will continue to suffer from mental anguish as a direct and proximate result of the aforesaid condition of silicosis.

**COUNT I**
**PRODUCT LIABILITY – 3M COMPANY**

28.    Plaintiff hereby restates and realleges each and every allegation set forth in the foregoing paragraphs as though they are fully set forth herein.

29.    At all material times, 3M was engaged in the business of manufacturing, distributing, supplying and/or marketing respirators intended to protect users of those respirators, including Plaintiff, from silica dust.

30.    3M's respirators were used by Plaintiff in order to protect Plaintiff from inhalation of silica dust.

31.    3M's respirators failed to protect Plaintiff from inhaling silica dust thereby directly causing or contributing to cause Plaintiff damage in that he contracted silica dust induced airway obstruction through the inhalation of respirable silica.

32.    The 3M respirators were in a defective condition and unreasonably dangerous for use in the expectable environment of use of said respirators when placed in the stream of commerce by 3M.  Said defective, unreasonably dangerous condition caused or was a contributing cause of the injuries and damages which are the basis of this suit.

33.    3M is liable to Plaintiff because as designer, manufacturer, distributor, and/or seller of its products in a defective, unreasonably dangerous condition, 3M owed Plaintiff a strict duty not to cause harm through the use of 3M's defective and unreasonably dangerous products.

34.     Further, 3M sold and placed in the stream of commerce defective and unreasonably dangerous respirators which were not safe for their reasonably anticipated use when 3M:

(a)     knew, or with the exercise of reasonable care should have known, that its respirators would not protect against silica dust, and, therefore, the respirators were in a defective, unreasonably dangerous condition;

(b)     failed to warn and/or adequately warn Plaintiff of such dangers that were posed by 3M's defective and unreasonably dangerous respirators;

(c)     knew or it was reasonably foreseeable, that 3M's respirators would be used by users or consumers such as Plaintiff, in the manner in which 3M's respirators were used by Plaintiff;

(d)     failed to instruct Plaintiff in the proper use of 3M's respirators to protect Plaintiff from harm, if, in truth, there was a way that the 3M respirators could protect Plaintiff from such harm;

(e)     knew, or with the exercise of reasonable care should have known, that 3M's respirators were designed in a manner where the respirators did not properly fit and could not be fitted properly to Plaintiff in the circumstances and under the conditions in which Plaintiff used the respirators;

(f)     knew, or with the exercise of reasonable care, should have known that 3M's respirators were ineffective in repelling silica dust and that when Plaintiff used 3M's respirators in a manner which 3M intended for the product to be used, Plaintiff was still exposed to dangerous silica particles;

(g)     knew, or with the exercise of reasonable care should have known, that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust.

35.     As a result of defendant's conduct, plaintiff was injured and suffered damages in an amount to be determined at trial.

36.     3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages.

7

## COUNT II
## BREACH OF WARRANTY – 3M COMPANY

37.     Plaintiff hereby restates and realleges each and every allegation contained in the foregoing paragraphs as though they are fully set forth herein.

38.     At all material times, 3M was a merchant who sold respirators and as such, 3M impliedly warranted that said respirators were fit for a particular purpose, would be safe and not unreasonably dangerous for use by the general public, and 3M also warranted that said respirators would be merchantable. At all material times 3M expressly warranted with respect to the 3M respirators used by Plaintiff during the term of his employment aforesaid, that "one size fits all faces", "one size fits most faces", and that the 3M 8710. NIOSH certified respirators that were approved to be used in a silica environment and could protect the user in a silica environment, and 3M Company breached its express warranty aforesaid because each of these respirators were dangerous and unsafe for the users thereof in a silica environment, including Plaintiff. 3M breached its implied warranty of fitness for a particular purpose aforesaid and of merchantability aforesaid and said breaches caused or were the contributing causes of Plaintiff's silica-related occupational lung disease.

39.     3M knew or should have known that its respirators would be purchased and used in environments containing silica dust particles. Further, 3M knew or should have known that its respirators would be purchased and used as a means of protecting Plaintiff from inhaling silica dust particles.

40.     Plaintiff reasonably relied on 3M's judgment that the respirators were fit for use in Plaintiff's work environment.

41.     3M's respirators were not fit for use in Plaintiff's work environment because the respirators failed to protect Plaintiff from inhaling silica dust.

42.     As a direct result of 3M's respirators being unfit for use in Plaintiff's work environment, and as a result of the silica-related occupational lung disease that he contracted, Plaintiff sustained damages in an amount to be determined at trial.

## COUNT III
## NEGLIGENCE – 3M COMPANY

43.     Plaintiff hereby restates and realleges each and every allegation contained in the foregoing paragraphs as though they are fully set forth herein.

44.     3M knew, or in the exercise of ordinary care, should have known of unreasonable risks of harm posed by the use of its respirators.

45.     Despite its actual or constructive knowledge that its respirators pose an unreasonable risk of harm, 3M:

(a)     failed to provide adequate warning and/or instruction with regard to the respirators;

(b)     failed to provide proper fitting instructions;

(c)     either ignored the results of filtering and quality control tests performed by 3M and others, or
failed to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

(d)     failed to properly design their respirators;

(e)     failed to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

(f)     failed to accompany its respirators with adequate warnings of their dangerous propensities;

(g)     knew, or with the exercise of reasonable care, should have known that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

(h)     failed to implement or enforce a valid quality control program to insure that 3M respirators were manufactured in compliance with federal certification regulations;

(i)    failed to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

46.    The acts and/or omissions by 3M directly caused or directly contributed to cause Plaintiff's silica dust-induced occupational lung disease damages as set forth herein.

47.    3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of compensatory and punitive damages in an amount to be determined at trial.

## COUNT IV
## FRAUD – 3M COMPANY

48.    Plaintiff hereby restates and realleges each and every allegation set forth in the foregoing paragraphs as though they were fully set forth herein.

49.    3M misrepresented to the workers at the ISP plant where Plaintiff was employed that the 3M 8710 had certain performance capabilities which it did not.  3M represented that the 3M 8710 was a NIOSH approved respirator when it was not, because the 3M8710 was failing internal quality control tests.  3M requested that the 3M 8710 could be used in work areas with silica dust concentrations when it could not, in fact, protect workers from silica.  3M represented that the 3M 8710 would filter out silica particles and protect the user when, in fact, it could not.

50.    3M also knowingly misrepresented that the 3M 8710 was approved by the National Institute for Occupational Safety and Health ("NIOSH") and met the approval requirements pursuant to the statutory requirements embodied 30 C.F.R. Part 11 of Federal Regulations.  At the time that 3M made such representations on packaging and marketing literature, it knew that these statements were false and untrue. Indeed, 3M knew that the 3M

8710 failed to meet NIOSH certification requirements and specifications. Nevertheless, the respirator was sold to the public with full knowledge by 3M that the respirator could not and did not meet the NIOSH approval regulations. Such conduct constituted false representations and concealments with the intent to induce Plaintiff's employer into purchasing the 3M 8710.

51.     As 3M well knew, the 3M 8710 was never designed nor capable of meeting the legal requirements for use around any operation where workers were exposed to pneumoconiosis producing dusts. More specifically, 3M knew that these respirators/dust masks were never capable of complying with the requirements of the Occupational Safety Health Act C.F.R. 1910.134(e)(5) because a face-piece-to-face fit was impossible to perform on this design of respirator/dust mask. Despite the fact that this face-piece-to-face fit check was required pursuant to the aforementioned regulation from at least 1972 to 1998, the Defendants sold and marketed these respirators/dust masks knowing that these respirators/dust masks could not comply with the fit check and fit test requirements under 29 C.F.R. 1910.134(e)(5). Knowing that these respirators/dust masks could not comply with the OSHA regulations, these Defendants intentionally and knowingly refused to inform purchasers of this equipment that the respirators/dust masks could not comply with 29 CF.R. 1910.134(e)(5). These Defendants refused to inform purchasers that the American National Standards Institute, a national consensus organization of manufacturers and safety experts, had declared that testing the fit of these type of respirators/dust masks to the fact with a proper face seal was "impossible" to perform. Despite the conclusions from this well respected and nationally recognized organization which the Defendant also belonged, the Defendant continued to sell these respirators/dust masks knowing that they could not be tested for fit and they could not comply with federal law. Furthermore, while persons like your Plaintiff was using the 3M 8710, Federal

regulations also required that a fit test be periodically performed on the respirator to determine proper fit. This fit test required that the mask be tested in a test atmosphere. However, no such suitable test agent was available for the 3M 8710 therefore making it impossible for employers to comply with the fit test requirement required by 29 C.F.R. § 1910.134(e)(5).

52.     Such inability to test the fit of these disposable respirators/dust masks pursuant to the requirements of 29 C.F.R. § 1910.134 (e)(5) made these products unreasonably dangerous. Nevertheless, 3M continued to sell these products knowing that they created an unreasonable danger and could not comply with the requirements of this regulation. This failure to disclose was intentional and willful and carried out by vice principals of these Defendants responsible for the sale and design of these respirators/dust masks because disclosure of such information would have resulted in the inability to sell respirators/dust masks to the public for the use which they were intended. Therefore, the Defendants knowingly, intentionally and willfully continued to sell these respirators/dust masks in their dangerous condition knowing that they were unreasonably dangerous and unsafe. They continued to do so with ill-will in order to continue the sale of these products and preserve their market share of these products, which they otherwise would have been unable to sell.

53.     3M further knew that the 3M 8710 did not meet the federal regulatory requirements for certification for use around this type of dust pursuant to 30 C.F.R. § 11.140-5 (1972-98). 3M's own internal testing revealed that in any given year of Plaintiff's use, approximately 90 to 100% of the masks it sold to the consuming public failed to comply with this certification testing provision or that in any given year 3M failed to properly perform quality control testing. Consequently, 3M violated the quality control requirements of 30 C.F.R. § 11.41 and § 11.43 because the defects revealed by 3M's own certification testing were classified as

Major A defects, which are defects defined by regulation that are "likely to result in failure to the degree that the respirator does not provide any respiratory protection or a defect that reduces protection and is not detectable by the user." 30 C.F.R. § 11.41 (d)(2) (1972-98). Furthermore, 3M was advised by NIOSH through written correspondence in April 1975 that these "Major A" defects existed as a result of an independent audit of 3M masks undertaken by NIOSH. Despite being placed on notice by NIOSH of these defects and despite having actual knowledge of these defects by virtue of 3M's own internal quality control testing, 3M continued to sell the 3M 8710. Consequently, 3M violated federal regulations by failing to follow the quality control requirements under 30 C.F.R. § 11.41 (d)(2) and § 11.42 (c) which required 3M to remove its NIOSH certification if it could not comply with the NIOSH certification requirements. 3M therefore deliberately, intentionally and willfully misled the potential purchasers of these masks and the ultimate users of this mask, such as the Plaintiff, by:

    (a)    failing to comply with NIOSH directives to improve quality control of the masks to prevent failures;

    (b)    selling masks which 3M knew could not and did not comply with federal certification regulation;

    (c)    refusing to inform the purchasers and users of these masks that the 3M 8710 was incapable of meeting federal certification requirements;

    (d)    refusing to redesign the mask to meet federal regulatory requirements; and

    (e)    fraudulently representing that the 3M 8710 complied with federal certification requirements when it/they did not.

    54.    3M's representations were material in that, upon information and belief, Plaintiff's employer would not have purchased the 3M 8710 if the Plaintiff's employer had known that the mask did not meet or exceed government certification requirements. These representations were thus relied upon by Plaintiff's employer, resulting in substantial injuries and

damages to Plaintiff. In this connection, Plaintiff further alleges that the Defendant 3M purported to have and did have superior knowledge concerning the subject matter of the transaction described above, and Plaintiff and his employer justifiably relied on Defendant's superior knowledge.

55.     The Plaintiff and his employer relied upon the representations made by the Defendant 3M in purchasing the 3M 8710. This reliance caused Plaintiff and his co-workers to utilize the 3M 8710 when they would not otherwise have used this respirator, proximately causing Plaintiff's injuries and damages.

56.     3M's misrepresentations constitute fraud, and were the proximate cause of Plaintiff's injuries and damages.

57.     In performing the acts described as follows above the Defendants acted maliciously, willfully, intentionally, recklessly and in wanton and willful disregard of Plaintiff's safety. Accordingly, Plaintiff is entitled to punitive and/or exemplary damages.

**COUNT V**
**LOSS OF CONSORTIUM**

58.     Plaintiff, Valerie Coene, hereby restates and realleges each and every allegation contained in the foregoing paragraphs as though they are fully set forth herein.

59.     At all times relevant herein, Plaintiff, Valerie Coene, was the wife of Plaintiff, Robert Coene, both were legally married to each other at the time of the occurrences herein, and Valerie Coene was entitled thereby to care, comfort, support, companionship, consortium and services of Robert Coene.

60.     As a direct result of the defective product, breaches of warranty and negligent conduct of Defendant 3M, and the injuries and damages to Plaintiff Robert Coene, Plaintiff,

Valerie Coene, suffered and continues to suffer the loss of society, consortium, companionship,

love, affection, support, and care of her spouse, Plaintiff, Robert Coene.

## COUNT VI
## PRODUCT LIABILITY – DTM CORPORATION, VALIMET, INC., POTTERS INDUSTRIES, INC., AND ARKEMA, INC.

61.     Defendants DTM Corporation, Valimet, Inc., Potters Industries, Inc. and Arkema,

Inc. failed to take any action whatsoever to warn the Plaintiff of the health risks associated with

its product.  These Defendants are therefore guilty of negligence in at least one or more of the

following particulars:

      (a)     In failing to warn Plaintiff of the dangers associated
               with continued exposure to its product;

      (b)     In failing to responsibly investigate the toxic effects
               of these chemicals on the human body;

      (c)     In failing to properly interpret any tests, analyzes or
               studies initiated or reviewed that related to the
               health effects of these chemicals.

Each of these acts and omissions were a proximate cause of Plaintiff's injuries and resulting

damages.

62.     The serious illness which Plaintiff suffers were proximately caused by a defect or

defects in the design, manufacture, and/or marketing of these chemical products, and that such

defects were present at the time these Defendants developed, manufactured, sold, distributed,

and/or transported the chemical products in question.  Such defects made these chemical

products unreasonably dangerous to those persons, such as the Plaintiff, who could reasonably be

expected to use and rely on the chemical products in question, and that such defects were a

producing cause of the plaintiff's injuries and damages.  These Defendants are therefore liable to

Plaintiffs under the Doctrine of Strict Liability in tort.

15

## COUNT VII
## NEGLIGENCE – DTM CORPORATION, VALIMET, INC.,
## POTTERS INDUSTRIES, INC., AND ARKEMA, INC.

63.     Defendants DTM Corporation, Valimet, Inc., Potters Industries, Inc. and Arkema, Inc. were negligent in developing, manufacturing, selling, distributing, and/or transporting the products in question and that such negligence proximately caused the deceased's death and Plaintiff's resulting injuries and damages.

64.     These four Defendants were negligent, and also culpable under the doctrine as negligence *per se,* including, but not limited to, the following particulars, each of which was a proximate cause of Plaintiff's injuries and damages:

(a)     In failing to adequately warn Plaintiff of the hazards associated with the inhalation of these chemicals, and, specifically, said Defendants failed to warn Plaintiff that she could contract scleroderma by using their products and/or equipment;

(b)     In failing to properly test these chemicals to determine the effect of inhalation of said chemicals upon the human body and lungs prior to release for consumer use;

(c)     In failing to inform ultimate users, such as Plaintiff, as to the safe and proper methods of handling and using their products; and

(d)     In failing to comply with 29 C.F.R. 1910.1200 by providing material safety data sheets which did not inform the employer and ultimate user of the potential that these materials could cause exposure to dangerous levels of crystalline silica.

(e)     In failing to warn Plaintiff of the hazard associated with the continued inhalation and exposure to these chemicals after developing early symptoms of silicosis.

Each and all of these acts, taken singularly or in combination, were a proximate cause of the damages sustained by Plaintiff Robert Coene.

65.     As a result of defendants' negligence, plaintiff suffered damages in an amount to be determined at trial.

**COUNT VIII**
**BREACH OF IMPLIED WARRANTY – DTM CORPORATION, VALIMET, INC.,**
**POTTERS INDUSTRIES, INC., AND ARKEMA, INC.**

66.     Defendants designed, manufactured, processed, packaged, distributed and/or sold the products in question in a defective condition and thereby breached an implied warranty of fitness and an implied warranty of merchantability.  Such breach or breaches of such implied warranties by the Defendants herein was a proximate cause of the injuries and damages sustained by Plaintiff.

67.     Plaintiff's occupational lung disease had a latency period and did not arise after first exposure, but, rather, many years later.  Consequently, the discovery rule applies and the statute of limitations was tolled until Plaintiff knew or in the exercise of reasonable diligence, should have known of his lung disease.  Plaintiff was not diagnosed with a silica related lung disease until October 7, 2007; therefore, under New York law, limitations is tolled until October 7, 2010.

**WHEREFORE,** Plaintiffs Robert Coene and Valerie Coene, demand judgment against Defendants:

      (a)     in an amount of actual damages which is fair and reasonable under the circumstances and in excess of $75,000;

      (b)     costs of suit;

      (c)     pre-judgment and post judgment interest;

17

(d)    punitive and exemplary damages; and

(e)    such other and further relief as this Court deems just and proper.


Dated: September 23, 2010

Respectfully submitted,

MCCALLION & ASSOCIATES, LLP

Kenneth F. McCallion (KFM 1591)
100 Park Avenue, Suite 1600
New York, NY 10018
Telephone: 646-366-0880
Email: KFM@mccallionlaw.com


**ATTORNEYS FOR PLAINTIFFS**